Mark A. MUNDT, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 39A04–9205–CR–156.

Court of Appeals of Indiana,
Fourth District.

April 19, 1993.

Transfer Denied June 16, 1993.

Jeffrey D. Stonebraker, Public Defender, Jeffersonville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Mark A. Mundt was convicted by jury of Attempted Burglary as a class B felony. A key part of the State's case was testimony by James R. Baird who was Mundt's accomplice in the attempted burglary. Mundt argues that because Baird's identity was a product of clean-up statements Mundt gave pursuant to his plea agreement, and because Mundt later withdrew his plea, Baird's testimony should be inad-

missible. We reject Mundt's "derivative evidence" rule and affirm the trial court's admission of Baird's testimony. Mundt also claims that there was insufficient evidence of his prior criminal record to warrant aggravating his sentence. However, we find that the specific details of Mundt's prior criminal record discussed at the sentencing hearing established a sufficient basis for the trial court's sentencing decision.

Affirmed.

## FACTS

The facts most favorable to the judgment reveal that on June 13, 1991, Mundt entered a plea of guilty to two counts of attempted burglary, and one count of theft. Part of his plea agreement provided that Mundt would give what are known as "clean up" statements—statements in which he would confess his participation in uncharged burglaries and thefts. Pursuant to this provision, Mundt testified the next day at a probable cause hearing against Baird detailing how, on March 13, 1991, he and Baird attempted to burglarize the residence of a Dr. Connard. Based on Mundt's testimony, the trial court found probable cause to issue an arrest warrant for Baird.

Later—for reasons not clear from the record—the deal between the State and Mundt broke down, resulting in Mundt withdrawing his plea at the sentencing hearing, and the State proceeding to trial against Mundt on one count of attempted burglary. Before trial, Mundt filed motions *in limine* to suppress: (1) Mundt's testimony at the June 13, 1991 guilty plea hearing and the June 14, 1991 probable cause hearing against Baird; and (2) the testimony of Baird. Following argument, the trial court granted Mundt's request with respect to the use of Mundt's own testimony; however, the trial court denied Mundt's motion regarding Baird. At trial, the State called Baird as a witness. Mundt objected and incorporated by reference his arguments made in his previous motion *in limine*. The trial court overruled Mundt's objection, and allowed Baird to testify. At the sentencing hearing, the trial court aggravated Mundt's sentence an additional four (4) years, for a total of fourteen (14) years, all executed.

## DECISION

I. Post–Plea Statements Were Admissible.

 Mundt contends the trial court should not have allowed Baird's testimony because it was derived from Mundt's withdrawn guilty plea. While Mundt and the State go back and forth arguing "fruit of the poisonous tree" versus "inevitable discovery," we find that both parties have misunderstood the statutory prohibitions against the use of statements related to the plea bargaining process as evidence in a criminal trial.[1]

The admissibility of guilty pleas and statements made during the course of plea negotiations is governed by statute. Ind. Code 35–35–1–4(d) provides:

> A plea of guilty ... which is not accepted by the court, or is withdrawn shall not be admissible as evidence in any criminal, civil, or administrative proceeding.

I.C. 35–35–1–4(d). Ind.Code 35–35–3–4 further provides that:

> A plea agreement, or a verbal or written communication concerning the plea agreement, may not be admitted into evidence at the trial of the case, should the plea agreement not culminate in approval by the court.

The purpose behind these rules is to promote the negotiated disposition of our burgeoning criminal caseload by shielding defendants from inadvertent self-incrimination. *See, generally, State v. Wolff* (1989), Ind.App., 545 N.E.2d 39, 40. Both statutes

---

1. Besides, any discussion of the "fruit of the poisonous tree" doctrine would be irrelevant to this case. That doctrine is an extension of the exclusionary rule to deter *Fourth* Amendment violations by excluding their "fruits." Here, there was no Fourth Amendment violation; instead, the only constitutional protection that could have possibly been implicated was Mundt's Fifth Amendment right to be free from self-incrimination. And, based on our analysis, no such self-incrimination occurred.

encourage the frank and open dialogue necessary between a defendant and the State during attempts to reach an acceptable agreement. It is apparent that, without these statutory protections, most defendants would be unwilling to participate in the plea bargaining process for fear that potentially damning statements could later come back to haunt them in the event the parties never reach an agreement, the defendant later withdraws his plea, or the trial court, for various reasons, refuses to accept the plea.

Mundt's argument strains both the language and purpose of our guilty plea statutes. Mundt's statements were not a "guilty plea," nor the factual basis underlying such a plea. Nor can his statements be construed as "communication[s] concerning [a] plea agreement" under I.C. 35–35–3–4. Instead, Mundt's testimony regarding Baird came *after* he and the State had reached their agreement. As previously stated, the aim of these statutes is to promote free and open discussions *leading up to* any plea agreement reached between the defense and the prosecution. Thus, once the bargain between Mundt and the State had been struck and the plea negotiations ended, the protections of I.C. 35–35–1–4(d) and 35–35–3–4 were rendered inapplicable. We fail to understand how excluding testimony after a plea agreement had been reached would serve the purposes of encouraging guilty pleas. Indeed, were we to adopt Mundt's interpretation, defendants who plead guilty would be encouraged to later taint as much of the State's evidence as possible—then withdraw their pleas—leaving the State with the burden to prove that it would have eventually discovered the tainted evidence on its own. If our legislature wishes to adopt such a provision on behalf of Indiana's criminal community, let them do so; however, such is not our province.

II. The Basis for the Trial Court's Sentencing is Clear.

▆▆▆ Finally, Mundt argues that the trial court erred by enhancing his sentence without adequately stating its reasons in its sentencing order. Trial courts are vested with wide discretion in imposing enhanced sentences. *May v. State* (1991), Ind.App., 578 N.E.2d 716, 723. Where the trial court enhances a sentence due to the defendant's prior criminal record, we require that the trial court detail such activity, and not merely recite statutory language. *See, Collier v. State* (1986), Ind., 498 N.E.2d 1219, 1221, *appeal after remand* (1991), Ind.App., 572 N.E.2d 1299, *trans. denied; Downer v. State* (1986), Ind., 501 N.E.2d 1052; *Page v. State* (1981), Ind., 424 N.E.2d 1021, 1023, *appeal after remand* (1982), Ind., 442 N.E.2d 977, *reh'g denied.* By specifically stating its reasons for deviating from the presumptive sentence, the trial court enables appellate review of its sentencing discretion. *Collier, supra.* While better practice would be for the trial court to set out a written statement of its reasons in its sentencing order, it is sufficient, in non-death penalty cases, if the trial court's reasons for enhancement are clear from a review of the sentencing transcript. *Coates v. State* (1989), Ind., 534 N.E.2d 1087, 1098; *accord, Gunter v. State* (1993), Ind.App., 605 N.E.2d 1209, 1212, *trans. denied.*

In its sentencing order, the trial court stated:

And the Court, having considered the written pre-sentence report and heard arguments of counsel, now sentences the Defendant to the custody of the Indiana Department of Corrections for classification and confinement for a period of fourteen (14) years for the crime of Attempted Burglary, a Class B Felony.

The reason for the sentence is there are no mitigating circumstances. *As an aggravating circumstance, Mr. Mundt's prior record of convictions indicates that an enhanced sentence of an additional four (4) years beyond the presumptive sentence is appropriate in this case.*

R. 104 (emphasis added). Without more, we might be forced to agree with Mundt that these general statements about Mundt's criminal record do not enable us to review the trial court's sentencing decision.

However, at the sentencing hearing, Mundt's counsel went over in detail Mundt's adult criminal history. From this, it is clear that Mundt had two theft convictions—one in 1984 as a class A misdemeanor, and another in 1987 as a class D felony. R. 552. Mundt also had a 1991 conviction for operating a vehicle while intoxicated as a class A misdemeanor. R. 552–53. Mundt did not deny these prior convictions in his testimony. While we would prefer reviewing a copy of Mundt's presentence report,[2] we find that the sentencing transcript sufficiently reveals the specific incidents relied upon by the trial court in enhancing Mundt's sentence.

Affirmed.

SHIELDS, J., concurs.

CONOVER, J., concurs in result.

---

2. We do not know why a copy of Mundt's presentence report was not included in the record. The Chronological Case Summary (CCS) shows that the report was filed with the trial court on January 10, 1992. And, although inartfully drafted, Mundt's praecipe was broad enough to include a copy of the report.