**Kevin L. GILLIAM, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 06A01–9411–CR–382.**

Court of Appeals of Indiana, First District.

April 27, 1995.

Rehearing Denied July 6, 1995.

Transfer Denied Sept. 14, 1995.

Richard K. Milam, Lebanon, for appellant.

Pamela Carter, Atty. Gen., Janet L. Parsanko, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Kevin L. Gilliam appeals from his convictions for Burglary, as a Class B felony, Residential Entry, as a Class D felony, and two counts of Theft, as Class D felonies, following a jury trial. We affirm.

### ISSUES

Gilliam presents three issues for our review which we restate as follows:

1. Whether the trial court erred when it admitted into evidence statements Gilliam made to a police officer.

2. Whether the trial court abused its discretion when it denied Gilliam's request for change of counsel.

3. Whether Gilliam was denied the effective assistance of trial counsel.

### FACTS

The facts most favorable to the verdicts show that, on December 1, 1993, Gilliam and a companion, David Pemberton, drove to the residence of DeeAnn Moore and parked their vehicle in the driveway. Pemberton went into the house and returned to the vehicle with several items. Gilliam assisted Pemberton in placing the items into the vehicle. DeeAnn Moore's brother, who lived across the street, noticed a strange vehicle parked in his sister's driveway. When Gilliam and Pemberton realized that the man was watching them, they retreated into the residence to hide. The two later exited the residence by opening a window and kicking out a screen.

Gilliam and Pemberton left the vehicle at the Moore residence and fled on foot to the home of Richard Hawkins. Gilliam broke a window, climbed inside the house and opened the front door for Pemberton. While inside the Hawkins residence, Gilliam telephoned a friend in an attempt to get a ride. Before leaving, Gilliam took some coins and a pair of coveralls. Gilliam, dressed in the coveralls, was arrested later that day.

Gilliam was charged with two counts of burglary, as Class B felonies, one count of Class D felony residential entry as a lesser included offense of burglary and two counts of theft, as Class D felonies. After a jury trial, Gilliam was convicted on only one count of burglary, the residential entry count, and both counts of theft.

## DISCUSSION AND DECISION

### Issue One: Statements to Police

■ Less than 48 hours before trial, Gilliam made several statements to Detective Paul Myers. During his communication with Detective Myers, Gilliam admitted his participation in the thefts that occurred at the homes of DeeAnn Moore and Richard Hawkins. He admitted that he entered both dwellings and also handled property. Gilliam contends that these statements occurred during plea negotiations and, thus, were inadmissible. We cannot agree.

■ Gilliam is correct that statements made by a defendant as part of plea negotiations are not admissible in a subsequent trial on the charged offense. *Martin v. State* (1989), Ind., 537 N.E.2d 491, 493; *see* IND. CODE § 35-35-3-4. Similarly, Evidence Rule 410 prohibits the admission of "any statement made in connection with" a plea offer. Rule 410 provides no test for determining whether a statement was made "in connection with" a plea offer. However, under our common law rules of evidence, to be privileged, "the communication must have as its ultimate purpose the reduction of punishment or other favorable treatment from the State to the defendant." *Crandell v. State* (1986), Ind.App., 490 N.E.2d 377, 380, *trans. denied.*

■ Whether the parties were engaged in plea negotiations is a question of fact for the trial court which we review only for clear error. *See United States v. Sitton* (9th Cir. 1992), 968 F.2d 947, 956, *cert. denied* — U.S. ——, 113 S.Ct. 478, 121 L.Ed.2d 384. The parties here do not dispute that Gilliam contacted Detective Myers in an attempt to negotiate a plea agreement. However, Detective Myers testified, and Gilliam concedes that during their one-hour communication, only approximately half of that time was devoted to discussing the possibility of a plea agreement. Brief of Appellant at 31, 34.

In ruling on a motion to suppress filed by Gilliam, the trial court suppressed any statements made by Gilliam during his attempt to reach a possible plea agreement, including statements which concerned his criminal history. Record at 139. The trial court deemed admissible other statements made by Gilliam in which he admitted his participation in the crimes charged in this case. Record at 139. It is apparent from our review of the record that the trial court determined Gilliam's statements regarding his participation in the crimes charged were not made "in connection with" his attempt to negotiate a plea and, thus, were admissible and relevant to the crimes charged. We cannot say that the trial court erred in that determination.

■ Even if we were to accept Gilliam's assertion that his admissions "were in connection with" his attempt to negotiate a plea, we find no error. Gilliam asserts that Evidence Rule 410 is not as narrow as its federal counterpart, which limits its protection to statements made "in the course of plea discussions with an attorney for the prosecuting authority." FED.R.EVID. 410(4). Although Rule 410 does not contain the limiting language contained in the Federal Rule, we conclude that the rule retains Indiana common law. Our common law provided that a defendant's statements made to a police officer who had no authority to enter into a binding plea agreement were not privileged plea negotiations and, thus, were admissible. *Martin*, 537 N.E.2d at 493. We can discern no sound reason why this common law rule should not continue under the Rules of Evidence.

■ "The plea bargaining process does not start until persons having the authority to make a binding agreement have agreed to negotiate." *Chase v. State* (1988), Ind., 528 N.E.2d 784, 786. To qualify as a privileged communication, a statement must meet two requirements: (1) the defendant must have been charged with a crime at the time of the statement, and (2) the statement must have been made to someone with authority to enter into a binding plea agreement. *Martin*, 537 N.E.2d at 493. Gilliam's statements fail to meet the second requirement. Detective Myers neither had the authority to negotiate on behalf of the prosecutor nor entered into any agreement with Gilliam. Gilliam's statement was merely a "unilateral offer of evidence to induce the State to negotiate" and, thus, was not privileged. *See id.*

■ Gilliam also asserts that his statements were taken in violation of his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel. Again, we cannot agree.

■ Statements made by those in police custody in response to police interrogation are inadmissible at trial unless the State proves beyond a reasonable doubt that the defendant knowingly and voluntarily waived his privilege against self-incrimination and his right to counsel and that the statements themselves were voluntarily given. *Johnson v. State* (1992), Ind., 584 N.E.2d 1092, 1098–99, *cert. denied* ── U.S. ──, 113 S.Ct. 155, 121 L.Ed.2d 105. In determining whether both the statement and waiver were voluntarily given, we look at the totality of the circumstances to determine if they were the product of any violence, threats, promises, or other improper influence. *Id.* Even when a defendant is represented by counsel, he can waive both his fifth amendment and sixth amendment protections by initiating the conversation or discussion with authorities. *Weaver v. State* (1991), Ind., 583 N.E.2d 136, 139.

Gilliam initiated contact with Detective Myers at which time he informed Detective Myers that he was unhappy with his attorney. Prior to taking Gilliam's statement, Detective Myers attempted to contact Gilliam's attorney but was unable to reach him. Detective Myers then obtained a Request to Make a Statement and Waiver of Rights form. Detective Myers read the *Miranda* advisements included on the form and explained to Gilliam that he would waive those rights by giving the statement. The waiver of rights section on the form provided in pertinent part:

> I hereby acknowledge that I at one time requested a lawyer, but now I wish to WAIVE that RIGHT. I further acknowledge that I have INITIATED this interview and that I have REQUESTED to make a statement.
>
> I hereby WAIVE my RIGHTS and state that I do *not* want a lawyer at this time and that I am willing to make a statement and answer questions.

> This WAIVER of my RIGHTS has been KNOWINGLY and VOLUNTARILY made by me without any promises or threats having been made to me and further without any pressure or coercion having been used against me.

Record at 247. Gilliam told Detective Myers that he understood his rights and then signed the form.

Despite the fact that he had an attorney, Gilliam personally contacted Detective Myers. After being advised of his rights Gilliam proceeded to make statements without his attorney present. Gilliam admits that he signed the advisement of rights form and was made aware of his constitutional rights. Brief of Appellant at 36. There is no evidence in the record that Detective Myers threatened or coerced Gilliam to make statements. Indeed, the evidence shows that Gilliam was unsatisfied with his attorney and was inclined to waive his right to have counsel present during his statements. Gilliam clearly initiated the communication and his statements were preceded by a knowing and voluntary waiver of his privilege against self-incrimination and his right to have counsel present. *See Weaver,* 583 N.E.2d 136, 139–40; *see also Kern v. State* (1981), Ind., 426 N.E.2d 385, 387 (representation by an attorney does not mean that law enforcement officers cannot take defendant's statement without notice to the attorney). The statements were not taken in violation of Gilliam's constitutional rights.

**Issue Two: Change of Counsel**

■ Gilliam next asserts the trial court abused its discretion when it denied his pro se request for a change of counsel on the day of trial. We disagree.

■ Whether to grant a defendant's request to change counsel immediately before trial is a matter within the sound discretion of the trial court. *Roberts v. State* (1986), Ind., 500 N.E.2d 197, 199. A motion for a change of counsel made close to the trial date which would require the court to grant a continuance, justifies the court in denying the motion as being untimely made. *Jackson v. State* (1985), Ind., 483 N.E.2d 1374, 1377. The trial court's determination will be set aside only when it constituted a

clear abuse of discretion which prejudiced the defendant's right to a fair trial. *Roberts,* 500 N.E.2d at 199. "Motions for continuance to hire a new lawyer made on the morning of trial are particularly disfavored because granting them causes substantial loss of time for jurors, witnesses, lawyers, and the court." *Id.*

On the day of his trial, Gilliam requested that the court appoint him a new attorney, and asserted that there had been a breakdown in the attorney-client relationship. Gilliam argued that his counsel had not prepared his case in the manner in which Gilliam wanted. While Gilliam's attorney admitted their relationship was strained, he informed the judge that he was fully prepared to proceed with the trial and that he intended to represent Gilliam competently and to the best of his ability. Record at 277–79. Under the circumstances, Gilliam has not shown that his right to a fair trial was prejudiced. The trial court did not abuse its discretion when it denied Gilliam's motion for change of counsel as untimely.

Still, in his reply brief, Gilliam directs this court to our recent decision in *Barham v. State* (1994), Ind.App., 641 N.E.2d 79, in which we considered a defendant's Sixth Amendment right to retain counsel of his choice. *Id.* at 82. In *Barham,* unlike the present case, the defendant did not merely express his desire to obtain private counsel. A private attorney had identified herself to the court as ready and willing to represent the defendant and attempted to enter an appearance on behalf of the defendant and obtain a continuance five days prior to the scheduled trial date. *Id.* On those facts, we held that the trial court interfered unreasonably and arbitrarily with the defendant's right to retain counsel of his choice. *Id.*

■ In *Barham,* we noted that a different case is presented when a defendant moves for a continuance on the day of trial and is not prepared to substitute new counsel. *Id.* at 83. While a defendant has an absolute right to be represented by counsel, a defendant is not necessarily entitled to a change in court-appointed counsel. *Parr v. State* (1987), Ind., 504 N.E.2d 1014, 1016. Here, Gilliam merely expressed his desire to

change attorneys on the morning of trial and had not identified other counsel willing to represent him. Indeed, he informed the trial court that he was unsure whether he had sufficient funds to obtain private counsel, or whether the court would need to appoint a second public defender. Record at 285–86. Thus, our decision in *Barham* does not apply to the present case.

### Issue Three: Ineffective Assistance of Counsel

Finally, Gilliam contends he was denied the effective assistance of counsel. The State argues that Gilliam has failed to demonstrate that his counsel's performance was deficient. We agree with the State.

■ Ineffective assistance of counsel "revolves around the particular facts of each case." *Williams v. State* (1987), Ind., 508 N.E.2d 1264, 1267. We will reverse on a claim of ineffective assistance of counsel only where a defendant shows both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced the defendant as to deprive him of a fair trial. *Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 123 (citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674). One is denied a fair trial when the conviction or sentence results from a breakdown in the adversarial process that renders the result unreliable. *Best v. State* (1991), Ind., 566 N.E.2d 1027, 1031.

■ "It shall be strongly presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Bellmore,* 602 N.E.2d at 123. If deficient performance can be proven, the defendant must further show that there is a reasonable probability that such performance altered the outcome of the case. *Id.* In this case, Gilliam asserts a number of instances of ineffective assistance, including that his counsel: (1) admitted Gilliam's guilt during opening statement; (2) elicited prejudicial testimony from witnesses; (3) called Gilliam to testify without having adequately prepared Gilliam; and (4) failed to make various objections. We

must examine Gilliam's allegations in light of the presumption that his counsel was competent.

### A. Opening Statement

■ Gilliam contends that he was denied the effective assistance of counsel because, during opening statement, his counsel admitted Gilliam's guilt and relieved the State of its burden to prove each element of the charged offenses. We cannot agree.

Gilliam was charged with one count of burglary and one count of theft with regard to the Moore residence. Gilliam argues counsel improperly admitted that Gilliam was at the scene of the alleged crimes that occurred at the Moore residence. However, during opening statement, Gilliam's counsel informed the jury of the State's burden to prove the elements of burglary including that Gilliam broke and entered the Moore residence with the intent to commit a theft therein. He explained to the jury "[n]ow you're not going to hear any evidence that can place Mr. Gilliam in that house. You're not going to hear any evidence that can, can show you that he broke into that house intending to commit a felony." Record at 337. Counsel then summarized the content of eyewitness testimony that would place Gilliam's companion, Pemberton, coming out of the Moore residence with merchandise in his hands. Record at 338. Counsel also told the jury that although Gilliam was at the scene, he neither entered the house nor participated in any crime.

It is apparent from the record that counsel's theory of the case was that Pemberton, not Gilliam, committed the offenses at the Moore residence. His counsel properly advised the jury that "mere presence at the scene is not enough to convict Mr. Gilliam of these crimes." *See Hunter v. State* (1991), Ind., 578 N.E.2d 353, 358. This was a legitimate trial strategy. We cannot say that counsel was ineffective.

With regard to the Hawkins residence, Gilliam was charged with one count of burglary, one count of residential entry as a lesser included offense of burglary, and one count of theft. Gilliam argues his counsel rendered ineffective assistance when he conceded that Gilliam broke into the Hawkins residence.

The record demonstrates that counsel's theory of the case for these counts was that Gilliam and Pemberton broke into the Hawkins residence with the intent to use the phone, and not with the intent to commit a felony therein. Counsel stated that while such behavior amounted to the lesser included offense of residential entry, and if anything was taken then also theft, the evidence did not support a conviction for burglary.

We again conclude that it was a legitimate trial strategy for Gilliam's counsel to argue a lesser included offense for Gilliam. *See Schick v. State* (1991), Ind.App., 570 N.E.2d 918, 927, *trans. denied* (counsel's strategy of arguing lesser included offenses did not amount to prohibited confession of guilt as State faced meaningful adversarial test of proving primary charges). Indeed, counsel's strategy was successful. Gilliam was not convicted for burglary of the Hawkins residence, but was found guilty of the lesser included offense of residential entry.

Further, counsel was required to explain Gilliam's admissions to Detective Myers. Opening statement was an opportunity to diffuse the impact of some of those admissions. On appeal, we will not speculate about what may have been the most advantageous strategy in a particular case. *See Mallory v. State* (1990), Ind.App., 563 N.E.2d 640, 645, *trans. denied.* Gilliam has not shown reversible error.

### B. Examination of Witnesses

■ Gilliam asserts his counsel elicited prejudicial testimony during cross-examination of Detective Myers, as well as during direct examination of defense witness Ron Eickleberry. However, Gilliam has not shown how he was prejudiced by such testimony. Gilliam has not overcome the presumption that counsel's tactics were an exercise of sound professional judgment. *Bellmore*, 602 N.E.2d at 123.

### C. Trial Preparation

■ Gilliam next contends his counsel rendered ineffective assistance when counsel

called him to testify without having adequately prepared him. However, Gilliam cites nothing in the record to support his bald assertion that he was not prepared to testify. Gilliam's counsel elicited testimony from Gilliam which supported the theory that Gilliam's companion, Pemberton, committed the alleged burglary and theft that occurred at the Moore residence, and that Gilliam was merely present at the scene. Further, Gilliam's testimony supported the theory that Gilliam broke and entered the Hawkins residence only to use the phone, and not with the intent to commit a felony therein. Gilliam has not shown he was prejudiced by his own testimony. *Id.* We find no error.

### D. Objections

 Finally, Gilliam asserts his counsel failed to make several objections to the admission of evidence. Whenever a claim of ineffective assistance is based on a failure to object, the defendant must demonstrate that a proper objection, if made, would have been sustained by the trial court. *Grigsby v. State* (1987), Ind., 503 N.E.2d 394, 396. The State asserts Gilliam has not shown that the objections by his counsel would have been sustained.

Gilliam contends his counsel failed to object to the admission of the photograph taken at the time of his arrest, as well as a "mug shot" taken of Gilliam at the jail on the day of his arrest. He argues that the photographs had no probative value and were prejudicial. Our supreme court has expressed the rationale for excluding mug shots as follows:

> "they show the 'well known frontal and profile view of a person with prison numbers and legend thereon referring to arrests or convictions [and] . . . there is an implication that the pictures were taken some time in the past when the defendant was charged or convicted of past crimes.' "

*James v. State* (1993), Ind., 613 N.E.2d 15, 28 (quoting *Teague v. State* (1978), 269 Ind. 103, 112, 379 N.E.2d 418, 422).

Here, neither photograph of Gilliam can be characterized as a "mug shot." One was taken outdoors at the time of Gilliam's arrest, and the other was taken at the jail. Both photographs were only frontal views of Gilliam, and neither prison numbers nor a prison legend appear on the photographs. The photographs were admitted through different witnesses to show identity and the appearance of Gilliam on the day of his arrest. Significantly, the jury was aware that both photographs were taken in connection with Gilliam's arrest for the present prosecution. Thus, the forbidden inference that the photographs were taken in connection with past crimes is not a concern. *See id.* Gilliam has not shown that the photographs were inadmissible or that an objection to their admission would have been sustained.

Gilliam also asserts his counsel should have objected as irrelevant and prejudicial to the admission into evidence of a pornographic magazine. The magazine was found, along with several other magazines which were addressed to Gilliam, in the backseat of a vehicle towed from the Moore residence. We agree with Gilliam that the pornographic nature of the magazine may have served to prejudice the jury. However, we cannot say that any possible resulting prejudice was so serious as to deprive Gilliam of a fair trial. *Bellmore*, 602 N.E.2d at 123.

In sum, we are not satisfied that "the evidence as a whole leads unmistakably and unerringly to the conclusion that defendant's trial counsel afforded ineffective assistance of counsel." *See Short v. State* (1989), Ind., 539 N.E.2d 939, 944. Gilliam has failed to establish that, but for his counsel's alleged errors, the result of his trial would have been different. Gilliam has not met his burden to show he was denied the effective assistance of counsel.

Affirmed.

BAKER and RUCKER, JJ., concur.