**Gabino GONZALEZ, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A01–0809–CR–406.

Court of Appeals of Indiana.

June 23, 2009.

Transfer Granted Sept. 11, 2009.

314 ■

Matthew Jon McGovern, Evansville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Matthew Whitmire, Deputy Attorney General, Indianapolis, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Gabino Gonzalez drove his pickup truck into a school bus while intoxicated. A jury found him guilty of criminal mischief and operating while intoxicated. Before his trial, while he was attempting to negotiate a guilty plea, Gonzalez wrote a letter to the school corporation in which he apologized for the accident and admitted he had been drinking that day. The trial court allowed the State to enter that letter into evidence.[1] Gonzalez argues on appeal that was error because the letter was hearsay and because a letter written as part of guilty plea negotiations is inadmissible at a trial.

The letter should not have been admitted and the error was not harmless. We accordingly reverse and remand for a new trial.[2]

## FACTS AND PROCEDURAL HISTORY

Gonzalez ran a stop sign and hit a school bus. He was charged with criminal mischief, operating a vehicle while intoxicated, operating a vehicle with a blood alcohol content of .15 or more, and operating a vehicle while intoxicated endangering a person. After his initial hearing Gonzalez agreed to plead guilty to criminal mischief and operating a vehicle while intoxicated endangering a person. The State agreed he would be sentenced to six months on each count, to be served concurrently. The trial court took the plea agreement under advisement.

The trial court reset its original sentencing date to allow the school corporation time to decide whether to object to the plea agreement. Gonzalez sent a letter to the School expressing his condolences to all who were "involved in the terrible accident I caused," apologizing for his "irresponsible actions" and "poor decision to drink that day," and asking the School to show compassion to him and his family by "allowing the Court to be somewhat lenient" in sentencing him. (App. at 36.) He promised to seek alcohol counseling and asked the School to consider that no one was injured in the accident. The trial court rejected the plea agreement and the case went to trial.

Before trial, the State asked that the letter be admitted into evidence. The trial court denied the request but reconsidered it during the trial. The letter was admitted over Gonzalez's objection. The court dismissed the count of operating a vehicle with a blood alcohol content of .15 or more, and a jury found Gonzalez guilty of the remaining charges.

## DISCUSSION AND DECISION

### 1. *Privilege*

Gonzalez's letter was a privileged communication that should not have been admitted into evidence because it was written as part of the plea negotiation process.[3] "A plea agreement, *or a verbal or written communication concerning the plea agreement,* may not be admitted into evidence at the trial of the case, should the plea agreement not culminate in approval by the court." Ind.Code § 35–35–3–4 (em-

---

1. Apparently Gonzalez wrote the letter in Spanish, but the letter the State presented at trial was an English translation.

2. We heard oral argument at Our Lady of Providence Junior—Senior High School in Clarksville on April 8, 2009. We thank the School for its hospitality and commend counsel on the quality of their advocacy.

3. Because we so hold, we need not address Gonzalez's argument the letter should not have been admitted because the State did not establish an adequate foundation.

phasis supplied). Ind. Evidence Rule 410 also so provides:

> Evidence of a plea of guilty or admission of the charge which was later withdrawn, or a plea of *nolo contendere,* or of an offer so to plead to the crime charged or any other crime, *or of statements made in connection with any of the foregoing withdrawn pleas or offers,* is not admissible in any civil or criminal action, case or proceeding against the person who made the plea or offer.

(Emphasis supplied.) In *Mundt v. State,* 612 N.E.2d 566, 568 (Ind.Ct.App.1993), *trans. denied,* we noted:

> It is apparent that, without these statutory protections, most defendants would be unwilling to participate in the plea bargaining process for fear that potentially damning statements could later come back to haunt them in the event the parties never reach an agreement, the defendant later withdraws his plea, or the trial court, for various reasons, refuses to accept the plea.

■ Rule 410 provides no test for determining whether a statement was made "in connection with" a plea offer. *Gilliam v. State,* 650 N.E.2d 45, 49 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* To be privileged, the communication must have as its ultimate purpose the reduction of punishment or other favorable treatment from the State to the defendant. *Id.*

Gilliam contacted a police detective to try and negotiate a plea agreement. About half of their one-hour communication was devoted to the possibility of a plea agreement. The trial court suppressed statements Gilliam made during his attempt to reach a plea agreement, including statements about his criminal history, but admitted other statements he made in which he admitted participating in the crimes charged. We upheld the trial court: "It is apparent from our review of

the record that the trial court determined Gilliam's statements regarding his participation in the crimes charged were not made 'in connection with' his attempt to negotiate a plea and, thus, were admissible and relevant to the crimes charged." 650 N.E.2d at 49.

Even if Gilliam's admissions had been "in connection with" his attempt to negotiate a plea, we determined they would not be privileged because the statements were made to a police officer who had no authority to enter into a binding plea agreement. We noted the plea bargaining process does not start until persons having the authority to make a binding agreement have agreed to negotiate, so for a statement to be privileged it must be made to someone with authority to enter into a binding plea agreement. *Id.* Gilliam's statement was merely a "unilateral offer of evidence to induce the State to negotiate" and thus was not privileged. *Id.*

Notwithstanding that *dictum* in *Gilliam,* we have not limited the privilege to statements made to persons with direct authority to enter into a binding plea agreement. In *Stephens v. State,* 588 N.E.2d 564, 566 (Ind.Ct.App.1992), *trans. denied,* we held a statement made to the author of a presentence investigation report was privileged even though the person to which it was made had no authority to enter into a plea agreement. The parties entered into a plea agreement and submitted it for approval. The trial court ordered a presentence report. Stephens met with the author of the pre-sentence report, and the report recounted an admission by Stephens that he possessed and sold the subject cocaine. The trial court rejected the plea agreement. Stephens testified at his trial, and on cross-examination the State introduced the incriminating pre-sentence report statement to impeach him.

■ We noted the rationale for the privileged status of such communications is the belief plea agreements should be encouraged as an essential component of the criminal justice system. *Id.* at 565–66.

The policy favoring plea agreements convinces us that the legislature intends to include within the category of plea agreement communication any communication necessary to effectuate the plea agreement. Statements made during the course of a pre-sentence report interview fall within this penumbra. A pre-sentence report is required prior to the court accepting or rejecting a plea agreement whenever the plea agreement indicates "that the prosecuting attorney anticipates that the defendant intends to enter a plea of guilty to a felony charge." IC 35–35–3–3(a) (1991 Supp.). In addition, IC 35–38–1–9(b)(1) (1991 Supp.) requires a pre-sentence investigator to gather information concerning the "circumstances attending the commission of the offense." The subject statement is such a statement. Accordingly, it was error for the trial court to allow the State to question Stephens about his self-incriminating statement.

*Id.* at 566.

■ Gonzalez's letter to the School was akin to Stephens' statement to the pre-sentence investigator, as it included "information concerning the 'circumstances attending the commission of the offense,'" *id.*, and it undoubtedly had "as its ultimate purpose the reduction of punishment or other favorable treatment from the State to the defendant." *Gilliam,* 650 N.E.2d at 49. Gonzalez's February 14 sentencing date was reset because the School expressed concerns about the plea agreement, and the trial judge wanted to give the School time to decide whether to object to the plea. Four days later, Gonzalez drafted the letter to the school board, asking it to support his plea agreement. The letter was made available to the probation department and made part of the pre-sentence report. The letter was part of the plea negotiating process and should not have been admitted.

The State distinguishes *Stephens* because the statements Stephens made were "a product of the pre-sentence investigation required by statute," (Br. of Appellee at 7), and "[n]either statute nor the court compelled [Gonzalez] to contact the victim." (*Id.* at 8.) Neither the statute nor the evidence rule governing admissibility of statements made in connection with plea negotiations requires the statements be "compelled" or related to any process "required by statute," and we decline the State's invitation to so limit the privilege.

The State also directs us to *Mundt,* where we held testimony by Mundt's accomplice was properly admitted. Mundt entered into a plea agreement that provided Mundt would give "clean up" statements—statements in which he would confess his participation in uncharged burglaries and thefts. Pursuant to that provision Mundt identified his accomplice in an attempted burglary. The plea deal broke down, and at trial the court denied Mundt's motion to suppress the accomplice's testimony.

We held Mundt's statements were not "communication[s] concerning [a] plea agreement" under Ind.Code § 35–35–3–4. Mundt's testimony regarding the accomplice came after he and the State had reached the agreement. We noted "the aim of these statutes is to promote free and open discussions leading up to any plea agreement reached between the defense and the prosecution." 612 N.E.2d at 568. Thus, "once the bargain between Mundt and the State had been struck and the plea negotiations ended, the protections of I.C. 35–35–1–4(d) and 35–35–3–4

were rendered inapplicable." *Id.* The State asserts Gonzalez's letter was written after the plea negotiations ended, so it was not privileged as part of the negotiations.

*Mundt* is distinguishable because in the case before us the sentencing court effectively introduced another party, the School, into the plea negotiation process. After the State and Gonzalez submitted the plea agreement, the trial court did not approve or reject it but instead took it under advisement and re-set the sentencing date to allow the School time to decide whether to object to it. We accordingly cannot say "the bargain ... had been struck and the plea negotiations ended" as in *Mundt* because the sentencing court deferred its approval or rejection of the plea agreement pending input from the School.

### 2. *Harmless Error*

The State argues any error in admitting the letter was harmless because the independent evidence of Gonzalez's guilt left "no substantial likelihood [the letter] contributed to the conviction." (Br. of Appellee at 10.) The error was not harmless.

■ Not every trial error requires reversal. Errors in the admission or exclusion of evidence are disregarded as harmless unless they affect the substantial rights of a party. *Turben v. State,* 726 N.E.2d 1245, 1247 (Ind.2000). To determine whether an error in the introduction of evidence affected an appellant's substantial rights, we assess the probable impact on the jury. *Id.* Improper admission of evidence is harmless when a conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial

likelihood the questioned evidence contributed to the conviction. *Barker v. State,* 695 N.E.2d 925, 931 (Ind.1998), *reh'g denied.*

■ We agree with Gonzalez's characterization of the letter as "tantamount to a confession." (Br. of Appellant at 14.) In the letter, Gonzalez admits he was drinking and he caused the accident. "A confession is like no other evidence." *Payne v. State,* 854 N.E.2d 7, 16 (Ind.Ct.App. 2006). The United States Supreme Court has noted:

> the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.... The admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so.

*Arizona v. Fulminante,* 499 U.S. 279, 296, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), *reh'g denied.*

The State points to other evidence of Gonzalez's guilt. Five witnesses, some of whom had training in identifying intoxicated individuals, testified Gonzalez showed signs he was intoxicated.[4] Police determined he failed to yield the right of way to the bus and there was evidence he was speeding and did not brake before he hit the bus. Gonzalez hit the bus so hard it fell to its side.

■ But the test is not whether there was other evidence of guilt; rather, it is the effect of the error on the jury. "The inquiry cannot be merely whether there

---

**4.** Gonzalez notes testimony by the officers who investigated the accident that they did not conduct field sobriety tests on him, and the State admitted no test results showing Gonzalez's blood alcohol content.

was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

In *Stewart v. State*, 754 N.E.2d 492, 496 (Ind.2001), a court improperly admitted Stewart's confession in his prosecution for murder and robbery. The State argued the error was harmless in light of other evidence of Stewart's involvement. Our Indiana Supreme Court disagreed:

> But for Stewart's confession, the State presented no evidence directly placing Stewart at the scene of Smith's murder. We do not discount the significance of the State's other evidence; however, we are unwilling to say that, in comparison to the probable impact of Stewart's confession, the trial court's error did not affect Stewart's substantial rights. The confession definitively established Stewart's role in the commission of the robbery and murder of Smith. The jury did not have to piece together Stewart's culpability from the collage of what Rice overheard Stewart say to Forte, Stewart's spontaneous statement to Martinez, and where the gun was found. The jury had Stewart, on tape, admitting his guilt. The probable impact of this evidence on the jury, in light of the other evidence, is not "sufficiently minor" so as not to affect Stewart's substantial rights. Therefore, the trial court's error in admitting Stewart's confession was not harmless.

*Id.*

Similarly, the jury in the case before us, having been presented with what amounted to Gonzalez's confession, did not have to "piece together" Gonzalez's culpability of criminal mischief and operating while intoxicated from evidence he exhibited some signs of intoxication, he was driving faster than the speed limit,[5] he did not yield the right of way, and he hit the bus with great force. The letter likely had a significant effect on the jury and its admission was reversible error even if there was other evidence before the jury that could support the conviction.

We reverse and remand[6] for a new trial.

BAILEY, J., and RILEY, J., concur.

---

**5.** The State asserts, without explanation or citation to authority, that the evidence of the speed at which Gonzalez was driving and the extent of damage, "even absent the intoxication, substantially supports the criminal mischief conviction." (Br. of Appellee at 12.) As an assertion unsupported by cogent argument or citation to authority is waived on appeal, *see* Ind. Appellate Rule 46(A)(8)(a), we decline to affirm on that ground.

**6.** Gonzalez may be retried, as principles of double jeopardy generally do not bar a retrial on the same crimes when reversal is required due to trial error in the admission of evidence. *Speybroeck v. State*, 875 N.E.2d 813, 822 (Ind.Ct.App.2007), *reh'g denied.* If all the evidence, even that erroneously admitted, is sufficient to support the jury verdict, double jeopardy does not bar a retrial on the same charge. *Id.* Evidence is sufficient if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*