Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**SAMUEL S. SHAPIRO**
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED
May 20 2013, 9:24 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFERY S. WILLIAMS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 59A05-1209-CR-487 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ORANGE CIRCUIT COURT
The Honorable K. Lynn Lopp, Special Judge
Cause No. 59C01-0610-FA-80

**May 20, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Jeffery S. Williams ("Williams") pleaded guilty to one count of possession of methamphetamine[1] as a Class B felony and appeals from the trial court's sentencing order for that conviction. Williams presents the following restated issues for our review:

I.      Whether the trial court abused its discretion by failing to enter a written sentencing statement containing the basis for the sentence selected by the trial court;

II.     Whether the trial court abused its discretion by failing to recognize mitigating factors supported by the record;

III.    Whether Williams's sentence is inappropriate in light of the nature of the offense and the character of the offender; and

IV.    Whether the trial court abused its discretion by failing to determine if Williams should receive credit for time he served on home detention imposed as a condition of his release on bond prior to his conviction.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

On October 17, 2006, during a routine traffic stop, police officers in Orange County discovered thirty-three grams of methamphetamine in T.H.'s possession. T.H. told the officers that she had received the methamphetamine from Williams earlier that day and that she had purchased several ounces of methamphetamine from Williams over the course of six months. T.H. acted as the middle person in transactions between Williams and other individuals on approximately thirty separate occasions. Williams would give T.H. the methamphetamine, and she would return the money from the transaction to Williams.

On October 18, 2006, in cooperation with the police, T.H. arranged to meet with

---

[1] *See* Ind. Code § 35-48-4-6.1(b)(2)(B).

2

Williams in a parking lot in Paoli, Indiana, in order to exchange money, more specifically $4,200, for methamphetamine Williams had previously fronted her and to possibly purchase more methamphetamine. Police officers recorded the telephone calls made between T.H. and Williams at that time. Williams stated that he only had about half the amount of methamphetamine that T.H. was requesting.

When Williams arrived at the parking lot, he was stopped by police officers. A search of Williams's vehicle revealed six bags containing a white crystal powder substance; two brown vials, in which one contained a green leafy substance; a plastic baggie containing seven different pills, two of which were schedule IV controlled substances, and one of which was a schedule III controlled substance; used drug paraphernalia; two sets of scales; numerous baggie ties; and a butane torch. An Indiana State Police Laboratory determined that the total amount of adulterated methamphetamine recovered from the vehicle was in excess of thirty grams.

The State charged Williams with two Class A felony offenses and filed a separate allegation that Williams was an habitual substance offender. Pursuant to a plea agreement reached with the State, Williams pleaded guilty to one count of possession of methamphetamine as a Class B felony in exchange for the dismissal of the additional charges. The factual basis for that plea established that Williams possessed less than three grams of methamphetamine.

The trial court sentenced Williams to fifteen years in the Indiana Department of Correction with twelve years of the sentence executed and three years suspended to probation. Williams appeals his sentence. Additional facts will be supplied as needed.

3

## DISCUSSION AND DECISION

## I. Sentencing Order

Williams contends that the trial court abused its discretion by failing to enter a written sentencing order detailing the reasons for the sentence imposed. Indiana Code section 35-38-1-1.3 provides that after a court imposes a sentence for a felony conviction, the court "shall issue a statement of the court's reasons for selecting the sentence that it imposes." Our Supreme Court has made clear that sentencing statements serve the primary, dual purposes of guarding against arbitrary and capricious sentences and providing an adequate basis for appellate review. *Anglemyer v. State*, 868 N.E.2d 482, 489 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007) (citing *Dumbsky v. State*, 508 N.E.2d 1274, 1278 (Ind. 1987)). Furthermore,

> [A] statement of reasons for imposing a particular sentence serves numerous other goals beyond the two primary goals. An attempt by the sentencing judge to articulate his [or her] reasons for a sentence in each case should in itself contribute significantly to the rationality and consistency of sentences. A statement by the sentencing judge explaining the reasons for commitment can help both the defendant and the public understand why a particular sentence was imposed. An acceptance of the sentence by the defendant without bitterness is an important ingredient in rehabilitation, and acceptance by the public will foster confidence in the criminal justice system.

*Abercrombie v. State*, 275 Ind. 407, 417 N.E.2d 316, 319 (1981). The sentencing statement should include a reasonably detailed recitation of the reasons a particular sentence is imposed. *Anglemyer*, 868 N.E.2d at 491.

While it is true that the original written sentencing order and the amended written sentencing order do not contain an explanation for the sentence imposed, the transcript of the sentencing hearing sets forth the trial court's reasons for the sentence that was chosen

4

and its evaluation of aggravating and mitigating circumstances. Williams does not challenge the adequacy of the oral sentencing statement. "The approach employed by Indiana appellate courts in reviewing sentences in non-capital cases is to examine both the written and oral sentencing statements to discern the findings of the trial court." *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007). "In reviewing a sentencing decision in a non-capital case, we are not limited to the written sentencing statement but may consider the trial court's comments in the transcript of the sentencing proceedings." *Corbett v. State*, 764 N.E.2d 622, 631 (Ind. 2002) (quoting *Walter v. State*, 727 N.E.2d 443, 449 (Ind. 2000)). "While better practice would be for the trial court to set out a written statement of its reasons in its sentencing order, it is sufficient, in non-death penalty cases, if the trial court's reasons for enhancement are clear from a review of the sentencing transcript." *Mundt v. State*, 612 N.E.2d 566, 568 (Ind. Ct. App. 1993). Williams has failed to show that the trial court abused its discretion in this regard.

## II. Failure to Recognize Mitigating Factors

Williams argues that the trial court abused its discretion by either rejecting proposed mitigating factors or by failing to attribute appropriate weight to proposed mitigating factors. Our Supreme Court stated the following with respect to aggravating and mitigating circumstances in *Anglemyer*:

> Even though the statute unambiguously declares that a trial judge may impose any sentence within the statutory range without regard to the existence of aggravating or mitigating factors, it is important to note that the statute does not prohibit the judge from identifying facts in aggravation or mitigation. Indeed the statute requires that if the trial court "finds" the existence of "aggravating circumstances or mitigating circumstances" then the trial court is required to give "a statement of the court's reasons for selecting the sentence that it imposes." I.C. § 35-38-1-3. This language

5

suggests a legislative acknowledgement that a sentencing statement identifying aggravators and mitigators retains its status as an integral part of the trial court's sentencing procedure. And this view is consistent with *Blakely,* which we have noted, "does not prohibit a trial court from finding aggravating circumstances. What [*Blakely*] does prohibit is a trial court finding an aggravating circumstance and enhancing a sentence beyond the statutory maximum." . . . .

If the recitation includes a finding of aggravating or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating.

. . . .

That is to say, subject to the review and revise power discussed below, sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. Nothing in the amended statutory regime changes this standard. So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion. As we have previously observed, "In order to carry out our function of reviewing the trial court's exercise of discretion in sentencing, we must be told of [its] reasons for imposing the sentence. . . . This necessarily requires a statement of facts, in some detail, which are peculiar to the particular defendant and the crime, as opposed to general impressions or conclusions. Of course such facts must have support in the record." An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom."

. . . .

One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

6

> Because the trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence, unlike the pre-*Blakely* statutory regime, a trial court can not now be said to have abused its discretion in failing to "properly weigh" such factors.

868 N.E.2d at 490-91 (most internal citations omitted). "[A] trial court is not obligated to weigh or credit the mitigating factors in the manner a defendant suggests they should be weighed or credited." *Cotto v. State*, 829 N.E.2d 520, 525 (Ind. 2005). Nor is a trial court obligated to accept a defendant's claim as to what constitutes a mitigating factor. *Gross v. State*, 769 N.E.2d 1136, 1140 (Ind. 2002).

Williams points to his effort toward reformation, which includes drug abuse rehabilitation and lawful employment, his eligibility for community corrections, and his acceptance of responsibility as mitigating factors finding support in the record, but that were rejected by the trial court. The record reflects however, that the trial court considered the mitigating factors advanced by Williams at sentencing. The trial court acknowledged that Williams was likely to respond to probation and found that Williams was unlikely to reoffend. The trial court also commended Williams for his efforts to maintain his sobriety since his arrest. The trial court stated that after Williams had served half of his sentence, the trial court was willing to consider a sentence modification involving placement in an alternative sentencing program such as community corrections.

In addition, the trial court evaluated Williams's proffered mitigating circumstance of his acceptance of responsibility. In the end, however, the trial court found that it could not determine the degree of Williams's sincerity. Witnesses testified that they believed he had accepted responsibility for his actions, but Williams downplayed his role in the events leading to his arrest, attributing the large quantity of methamphetamine found by

7

the officers to his own personal consumption. T.H. had stated that she had been a middle person for Williams and helped him complete drug-related transactions for quite some time. Additionally, in light of the significant benefit Williams received in exchange for his guilty plea, we find no abuse of discretion here. The record indicates that the trial court considered this proffered mitigating factor and rejected it.

Williams asserts that the trial court did not consider his employment as a separate mitigating factor. We note, however, that during the sentencing hearing, Williams pointed to his employment in reference to his personal reformation, not as a separate mitigating factor. "If the defendant fails to advance a mitigating circumstance at sentencing, this court will presume that the circumstance is not significant and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal." *Simms v. State*, 791 N.E.2d 225, 233 (Ind. Ct. App. 2003). To the extent that Williams advanced the evidence of his employment in mitigation, it was in the context of his reformation. The trial court did not abuse its discretion in this regard.

Williams appears to urge this court to find that the trial court abused its discretion by "diminution of his mitigators." *Appellant's Br*. at 16. We express no opinion on this claim, however, because the trial court is not obligated to weigh or credit the mitigating factors in the manner a defendant suggests. *Cotto*, 829 N.E.2d at 525. Moreover, review of the weight assigned to aggravating and mitigating circumstances is not subject to appellate review. *Anglemyer*, 868 N.E.2d at 491.

8

### III. Inappropriate Sentence

Williams argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender. Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer*, 868 N.E.2d at 491). The defendant has the burden of persuading us that his sentence is inappropriate. *Id.* (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)). Furthermore, our review under Appellate Rule 7(B) focuses on whether the sentence imposed is inappropriate, rather than whether another sentence is more appropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). "In making this determination, we may look to any factors appearing in the record." *Calvert v. State*, 930 N.E.2d 633, 643 (Ind. Ct. App. 2010). "[I]nappropriateness review should not be limited, however, to a simple rundown of the aggravating and mitigating circumstances found by the trial court." *McMahon v. State*, 856 N.E.2d 743, 750 (Ind. Ct. App. 2006).

Williams pleaded guilty to a Class B felony. The sentencing range for a Class B felony is a fixed term of between six and twenty years, with the advisory sentence being ten years. Ind. Code § 35-50-2-5. The guilty plea in this case provided for a sentencing cap of fifteen years executed. Williams received a sentence of fifteen years, with twelve years executed and three years suspended to probation.

With respect to the nature of the offense and the character of the offender, the record reflects that the trial court found as an aggravating circumstance the existence of a prior criminal history. While the trial court correctly noted that Williams's most recent prior offense was from 1992, and as the trial court put it, "has some age on it," *Tr.* at 69, the court further acknowledged that the nature of the circumstances leading up to Williams's 1992 conviction involved a situation quite similar to the situation leading to his arrest for the current offense. In 1992, Williams was stopped for driving at an excessive speed and a search of his vehicle led to the discovery of scales, bags containing methamphetamine and cocaine, and various other paraphernalia associated with the use and sale of narcotics. *State's Ex. 5* at 10. The trial court found the additional aggravating factor that Williams had a continuing history before the court of abusing controlled substances.

Here, Williams pleaded guilty to the lesser-included offense of possession of methamphetamine as a Class B felony, and the factual basis for the offense established that he possessed less than three grams of methamphetamine. The probable cause affidavit, however, revealed that the total amount of adulterated methamphetamine recovered from Williams's vehicle was in excess of thirty grams. Williams was arrested while arriving at a pre-determined location to collect money from T.H., the middle person for Williams and his buyers in numerous drug-related transactions. Williams has failed to meet his burden of establishing that his sentence is inappropriate.

10

## IV. Pre-Trial Home Detention Credit

Williams claims that the trial court abused its discretion by failing to award him credit for time served on home detention that was ordered as a condition of release on bond prior to trial. During sentencing on Williams's guilty plea, the trial court announced that it was not allowed to award credit to Williams for that pre-conviction home detention. The State seems to concede on appeal that the matter should be remanded to the trial court to make a determination on whether to award credit. *Appellee's Br.* at 5.

In *Lewis v. State*, 898 N.E.2d 1286, 1290 (Ind. Ct. App. 2009), *trans. denied*, we stated the following about the issue:

> When a statute provides for jail time credit, the trial court does not "have discretion in awarding or denying such credit." *Molden v. State*, 750 N.E.2d 448, 449 (Ind. Ct. App. 2001) (citing *Weaver v. State*, 725 N.E.2d 945, 947 (Ind. Ct. App. 2000)). "However, those sentencing decisions not mandated by statute are within the discretion of the trial court and will be reversed only upon a showing of abuse of that discretion." *Id.* (citing *Jones v. State*, 698 N.E.2d 289, 291 (Ind. 1998)). When a defendant "had not yet been convicted and was serving a stint of pretrial home detention," no statute mandates an award of "credit for time served against his eventual sentence." *Id.* at 450 (citing *Purcell v. State*, 721 N.E.2d 220, 223, 224 n.6 (Ind. 1999)), 451 ("There is no statute that addresses credit for time served while on pretrial home detention."). Hence, whether to award credit for such time is a matter of trial court discretion. Id. at 451.

Thus, we remand this matter to the trial court to decide whether to grant Williams credit for his pre-trial release on bond.

Affirmed in part, reversed in part, and remanded.

VAIDIK, J., and PYLE, J., concur.