ATTORNEY FOR APPELLANT
Matthew Jon McGovern
Evansville, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Matthew Whitmire
Deputy Attorney General
Indianapolis, Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana



FILED
May 19 2010, 2:39 pm

CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 82S01-0909-CR-408

GABINO GONZALEZ,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Vanderburgh Superior Court, No. 82D02-0610-FD-898
The Honorable Mary Margaret Lloyd, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 82A01-0809-CR-406

**May 19, 2010**

**Boehm, Justice.**

We hold that a defendant's statements made to a victim or to the court in an effort to gain acceptance of a plea agreement by the court are statements in connection with a plea agreement and therefore are not admissible in evidence pursuant to Evidence Rule 410. In this case the defendant's letter of apology to a victim was admitted at his trial after a plea agreement was rejected. This was error but under the facts of this case the error was harmless.

**Facts and Procedural History**

A truck driven by Gabino Gonzalez failed to yield at an intersection and struck a school bus operated by Evansville-Vanderburgh School Corporation ("EVSC"). The bus was declared a total loss and its driver and thirteen children sustained cuts and bruises resulting in hospital bills totaling approximately $9,000. Gonzalez was charged with criminal mischief, operating a vehicle while intoxicated, operating a vehicle with a blood alcohol content of 0.15 or more, and operating a vehicle while intoxicated endangering a person.

Gonzalez agreed to plead guilty to criminal mischief and operating a vehicle while intoxicated endangering a person. The trial court took the plea agreement under advisement and postponed the sentencing hearing to permit EVSC to consider whether to object to the agreement. Two weeks before the hearing, Gonzalez sent a letter to EVSC expressing his regret to all who were "involved in the terrible accident I caused," apologizing for his "irresponsible actions" and "poor decision to drink that day," and asking EVSC to show compassion to him and his family. He promised to seek alcohol counseling and asked EVSC to consider that "no one was hurt in the accident."

The court rejected the plea and the case went to trial where Gonzalez's letter was admitted over his objection. After the court dismissed the charge of operating a vehicle with a blood alcohol content of 0.15 or more, the jury found Gonzalez guilty of the remaining charges.

The Court of Appeals reversed, finding that Gonzalez's letter was inadmissible because it was written as a part of a plea negotiation and that the error "likely had a significant effect on the jury." Gonzalez v. State, 908 N.E.2d 313, 315, 319 (Ind. Ct. App. 2009). We granted transfer.

**I. Statements in Connection with a Plea Agreement**

Gonzalez argues that his letter was inadmissible because he authored it and addressed it to EVSC in the course of the plea negotiation in an effort to convince EVSC not to object to the plea agreement. The State counters that the letter was not a part of the plea negotiation because it was written after the agreement between Gonzalez and the State had been signed. The State also argues that the letter was admissible because it was addressed to EVSC, the victim, and not to an entity with authority to enter into a binding plea agreement.

2

The common law, an Indiana statute, and Evidence Rule 410 all recognize that statements incident to plea bargaining may be inadmissible at trial. Gilliam v. State, 650 N.E.2d 45, 49 (Ind. Ct. App. 1995). This rule is designed to encourage open discussion in the plea bargaining process. Stephens v. State, 588 N.E.2d 564, 565–66 (Ind. Ct. App. 1992), trans. denied. This exclusion is rooted in the same policy considerations that underlie excluding offers of civil compromise in civil cases. 2 McCormick on Evidence § 266, at 237 (Kenneth S. Broun et al. eds., 6th ed. 2006); see Bules v. Marshall County, 920 N.E.2d 247, 252 (Ind. 2010) ("[This rule] is designed to facilitate settlement by promoting candor in settlement discussions . . . .").

We last addressed the scope of the privilege for plea negotiations in Martin v. State, 537 N.E.2d 491 (Ind. 1989). Martin held that a suspect's inquiry of a probation officer regarding the prospects of a plea agreement was not within the privilege. Martin was decided under Indiana Code § 35-35-3-4, which provides:

> A plea agreement, or a verbal or written communication concerning the plea agreement, may not be admitted into evidence at the trial of the case, should the plea agreement not culminate in approval by the court.

Martin dealt with statements by the defendant before any plea negotiations had begun and held the statements were therefore not within the privilege. We reasoned that the plea bargaining process does not start until the parties have agreed to negotiate. Martin, 537 N.E.2d at 493 (citing Chase v. State, 528 N.E.2d 784, 786 (Ind. 1988)). We also held that in order to qualify as a privileged communication, a statement must meet two requirements: "first, the defendant must have been charged with a crime at the time of the statement, and, second, the statement must have been made to someone with authority to enter into a binding plea bargain." Id. The State contends that this second requirement rendered the privilege unavailable for Gonzalez's letter to EVSC. As explained below, we do not agree.

In 1994, Indiana adopted the current Evidence Rules, including Evidence Rule 410, which reads:

> Evidence of a plea of guilty or admission of charge which was later withdrawn, or a plea of nolo contendere, or of an offer so to plead to the crime charged or any other crime, or of statements made in connection with any of the foregoing withdrawn pleas or offers, is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer.

The rule arguably broadens somewhat the range of privileged communication, expanding from the statutory privilege for statements "concerning" a plea agreement to those "in connection with" an agreement.

As Martin held, the privilege attaches only after a plea negotiation has begun. In this case that is no issue because a plea agreement had been reached and was under consideration by the court. Only the prosecutor has the authority to enter into a plea agreement, and certainly a defendant's statements in the course of negotiation with the prosecutor are within the privilege afforded by the plea negotiation. The purposes of the rule require also excluding statements to some persons in addition to those with authority to enter into a binding agreement. Under Indiana law, after a defendant and the State enter into a plea agreement, the trial court is required to order a presentence report. I.C. § 35-35-3-3(a). The probation officer preparing this report is to gather information regarding "the circumstances attending the commission of the offense." I.C. §§ 35-38-1-8(a), -9(b)(1). The plea agreement must also be shown to the victim, who has a right to comment on the crime and the proposed sentence. I.C. § 35-35-3-5. The agreement is not final until it is approved by the trial court. I.C. § 35-35-3-3. In the course of this process, the defendant may make statements to the victim, the trial judge, or other court officers. These statements are within the language of both the statute ("concerning" a plea agreement) and Evidence Rule 410 ("in connection with" a plea agreement). Moreover, the purposes of the rule—to encourage candor and facilitate a plea agreement——are best furthered by excluding any concessions from evidence if the plea is not finalized. Accordingly, we hold that for a statement to be a privileged communication, the defendant must have been charged with a crime at the time of the statement and the prosecutor and the defendant must have initiated discussions related to a plea agreement. Second, the statement must have been made with the intent of seeking a plea agreement or in contemplation of a proposed agreement. Third, the statement is privileged if made to someone who has the authority to enter into or approve a binding plea agreement or who has a right to object to or reject the agreement.

Here, Gonzalez and the State had agreed to a proposed plea agreement. Before the agreement could be finalized, it required approval of the trial court. EVSC, as a victim of the accident, had a right to express its opinion to the court as to approval of the agreement. Gonzalez then wrote the letter in question to EVSC in an attempt to persuade it to accept the

4

agreement. Gonzalez's letter had "as its ultimate purpose the reduction of punishment or other favorable treatment from the State to the defendant." Gilliam, 650 N.E.2d at 49 (quoting Crandell v. State, 490 N.E.2d 377, 380 (Ind. Ct. App. 1986) trans. denied). Gonzalez's letter was therefore a communication made in connection with his guilty plea. Accordingly, the trial court erred in admitting the letter at trial.

## II. Harmless Error

The State contends that even if the trial court erred in admitting Gonzalez's letter at trial, the error was harmless. We agree.

An error in admitting evidence does not require reversal unless it affects the substantial rights of a party. Stewart v. State, 754 N.E.2d 492, 496 (Ind. 2001). The effect of an error on a party's substantial rights turns on the probable impact of the impermissible evidence upon the jury in light of all the other evidence at trial. Id. Put differently, the error is harmless when the conviction is supported by such substantial independent evidence of guilt that there is no substantial likelihood that the impermissible evidence contributed to the conviction. Barker v. State, 695 N.E.2d 925, 931 (Ind. 1998).

To convict Gonzalez of criminal mischief as a Class D felony, the State was required to prove that Gonzalez recklessly, knowingly, or intentionally damaged EVSC's property without its consent, and the damage was worth more than $2,500. I.C. § 35-43-1-2(a). To convict Gonzalez of operating a vehicle while intoxicated endangering a person, a Class A misdemeanor, the State was required to prove that Gonzalez drove his truck, while intoxicated, in a manner that endangered a person. I.C. § 9-30-5-2.

At trial, one bystander who witnessed the accident testified that Gonzalez's truck was "flying down the street" and "going way faster than the speed limit" in a residential neighborhood, almost hit a car, and forced a second vehicle to drive into a yard. Gonzalez failed to yield at an intersection and struck the school bus with such force that the bus fell on its side. The bystander and the bus driver both testified that they did not hear Gonzalez attempting to brake before hitting the bus. The bystander also testified that Gonzalez was disoriented, needed to be held up, and urinated as he was taken from his truck.

5

Sergeant Darren Sroufe, who was called to the scene, testified that the damage to the bus and Gonzalez's truck suggested that Gonzalez was driving fifty to sixty miles per hour—in a thirty miles-per-hour zone—and that the absence of skid marks showed a failure to brake. Sroufe also testified that Gonzalez and his passenger were both trapped in his truck and had to be released by the Fire Department. After Gonzalez exited his truck, Sroufe observed that Gonzalez's eyes were bloodshot, his speech was slurred, and he was disoriented and unable to stand on his own. Sroufe smelled alcohol on Gonzalez's breath and in the truck itself.

Detective Douglas Daza, who responded to the scene and tried to elicit information from Gonzalez, testified that Gonzalez appeared to be intoxicated because his eyes were "extremely bloodshot and watery," he smelled "strongly" of alcohol, and he had problems responding to questions. Officer Chris Joergen, who met with Gonzalez after he was taken to the hospital, testified that Gonzalez smelled of alcohol, was uncooperative, and was intoxicated or impaired. The nurse who treated and admitted Gonzalez as an "inebriated post-trauma patient" testified that he said he had been at a party drinking that day.

In short, the evidence supporting Gonzalez's conviction was overwhelming without the letter. Five witnesses—including four who had received training in identifying intoxicated individuals—testified that Gonzalez appeared to be intoxicated at the time of the accident. Gonzalez's excessive speed and failure to yield constituted reckless driving. Gonzalez "flew" through a residential neighborhood, caused more than $25,000 in damages to the bus he struck, and endangered thirteen students, the bus driver, Gonzalez's passenger, and other bystanders. There was essentially uncontroverted independent evidence supporting each charge, and the error in admitting his letter was therefore harmless.

**Conclusion**

Gonzalez's conviction and sentence are affirmed.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.