**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 20 2012, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CYNTHIA CARTER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GEORGE SANDERS, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1112-PC-703 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Judge
Cause No. 02D04-0908-PC-70

**September 20, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, George Sanders (Sanders), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

## ISSUES

Sanders raises four issues on appeal, which we consolidate and restate as the following three issues:

(1) Whether Sanders received effective assistance of counsel;

(2) Whether the trial court was obligated to investigate Sanders' complaints about his counsel; and

(3) Whether the post-conviction court properly allowed the trial prosecutor to remain at counsel's table as an assisting witness for the State.

## FACTS AND PROCEDURAL HISTORY

We adopt our supreme court's statement of facts as set forth in its opinion issued in Sanders' direct appeal, *Sanders v. State*, 840 N.E.2d 319, 320-22 (Ind. 2006):

> In May 2003, J.R., a 12-year-old girl, spent the night at the home of her friend A.S. and A.S.'s father, [Sanders]. J.R., A.S., and Sanders were lying on a bed in the basement watching television; Sanders lay between the girls. Sanders began rubbing J.R.'s back underneath her clothes. J.R. began to fall asleep, but woke up as Sanders rubbed her feet and continued up her leg with his hand. Sanders continued until he reached J.R.'s vagina, where he inserted two of his fingers.
>
> J.R. and A.S. eventually left the basement and slept in A.S.'s room. J.R. did not tell her mother or A.S.'s mother what had happened because she was scared. But the next day, A.S. went home with J.R. and told J.R.'s mother. The following day, J.R. spoke with the police about the incident

2

and was examined by a nurse. The nurse testified that during an examination of J.R.'s genitals, she found two abrasions or scratches indicative of some type of penetrating trauma.

The State charged Sanders with Class A felony child molesting and Class C felony child molesting. A few months later, Sanders sent the following letter directly to the trial judge:

> Dear Judge [].
>
> My name is [Sanders], I am a common man, and I have never written to a Judge before.
>
> I pray, you will accept this, I humbly, wish to *apologize to the court*, and to [J.R.'s] family, and to God the Father in heaven, for any action, I or my family has done, to cause any trials or heart aches for them in any way (Proverbs 14:14) says [,] "you harvest what you plant." *My stupidity has!* I have never had a felony in the 50 years of my life, a beer or even a cigarette.
>
> I have no criminal record in Canada for 30 years, when I was asked to move here on a H1 visa. (Proverbs 19:3). "*We are ruined by our own stupidity* and that, *a good reputation* and *respect*, are *worth more* than *silver* and *gold*. (Prov. 22:1).
>
> *I can honestly say* I never had *any desire* or did I make any attempt to have sex with the girl. *But I did touch someone else's child.*
>
> I just found out, from my attorney, that my 9 year old daughter also admitted to touching her accidentally and that she had been molested by her father and her mother's boy friend.
>
> *I feel awlful* [sic]. I have to accept this plea, because, *I did touch her* and I have 9 children of my own including 3 step children.
>
> *I do not wish to cause* this family, any more pain or suffering, than what, they have all ready [sic] gone through. Especially in Court.
>
> I have cried hours, about the hardship *I caused them* and *am truly sorry*! I was told they also, lost a family member, in an accident, some years ago . . . I have lost my good reputation, and all that we have owned, my job, all our vehicles, and had to file Bankruptcy.

3

(Proverbs 17:10) says: "*a sensible person accepts correction*, but you can't beat sense into a fool." I asked *God the Father to forgive me as well*.

"If we truly love God, our sins *will be forgiven*, if we show him *respect*, and *we will keep away from sin*.

I promise you, that something like this, *will never happen again*, as long as *I live*.

God is a God of Judgment, but he is also a God of *Mercy* and a God of *Reconciliation*. As I am the only child, *I will need to bury my mother*, who is 93 in Canada soon.

I ask for you *mercy* and *consideration* in this matter.

Thank you!

[Sanders]

P.S. Please forgive me, if I have done wrong, by writing this letter of apology.

Thank you!

At trial, the State admitted over Sanders' objection a version of this letter that was redacted. In the redacted version of the letter, the following language was omitted from the fifth paragraph: "and that she had been molested by her father and her mother's boy friend." The jury found Sanders guilty as charged, and the trial court sentenced him to 30 years for Class A child molesting.

(Internal references omitted)

Sanders appealed. On appeal, Sanders raised two issues: 1) he challenged the admission of the redacted version of the letter on alternative grounds that either the letter should be inadmissible or admitted without redaction and 2) he contested the exclusion of evidence regarding J.R.'s prior experience of hallucinations. Because we held that the letter was improperly admitted at trial, we reversed Sanders' conviction. *See Sanders v.*

4

*State*, 823 N.E.2d 313, 318 (Ind. Ct. App. 2005). The State sought transfer and, on January 12, 2006, our supreme court concluded that the letter was properly admitted in redacted form, thereby affirming Sanders' conviction.

On September 24, 2009, Sanders filed a petition for post-conviction relief, which he later amended. On June 6, 2011, the post-conviction court conducted a hearing on Sanders' petition. On November 23, 2011, the post-conviction court entered findings of fact and conclusions of law denying the petition.

Sanders now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1, § 5; *Strowmatt v. State*, 779 N.E.2d 971, 974-75 (Ind. Ct. App. 2002). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 975. The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id*. If an issue was available on direct appeal but not litigated, it is waived. *Id*.

### II. *Ineffective Assistance of Counsel*

Sanders contends that he was denied the effective assistance of both trial and appellate counsel. The standard by which we review claims of ineffective assistance of

counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005), *trans. denied* (citing *Strickland v. Washington*, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied*). The two prongs of the *Strickland* test are separate and independent inquiries. *Johnson*, 832 N.E.2d at 996. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Timberlake*, *v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *reh'g denied, cert. denied*, 537 U.S. 839 (2002) (quoting *Strickland*, 466 U.S. at 697).

Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord those decisions deference. *Timberlake*, 753 N.E.2d at 603. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id*. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*. Furthermore, we will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Johnson*, 832 N.E.2d at 997.

6

## A. *Trial Counsel*

Sanders argues that he received ineffective assistance of trial counsel. Specifically, he urges us to find that his trial counsel was ineffective for the following: (1) failing to object to the admission of his letter because its admission violated Indiana Evidence Rule 410; (2) failing to present evidence from the movie, The Exorcist; (3) failing to discover an additional witness; and (4) failing to view the redacted videotape prior to stipulating to its admission at trial. We will discuss each of these contentions in turn.

### 1. *Admission of Sanders' Letter*

Sanders initially contends that his trial counsel was ineffective by failing to object to the admission of Sanders' letter on the basis of Ind. Evid. R. 410, which governs the admission of statements made in connection with a withdrawn guilty plea. The letter, written by Sanders to the trial court, was a key piece of evidence in the State's case as well as a contested issue in Sanders' direct appeal. At trial, Sanders' counsel had objected based on Ind. Evid. R. 106—the rule of completeness—and alternatively, he raised the highly prejudicial nature of the letter's content. In his post-conviction appellate proceedings, Sanders now asserts that his counsel was ineffective because the letter constituted a privileged communication under Evid. R. 410 and, characterized as such, should not have been admitted.

On September 24, 2009, Sanders filed his petition for post-conviction relief, which he amended on May 28, 2010. In his motion to amend, Sanders asserted, in pertinent part,

7

2. On May 19, 2010, the Indiana Supreme Court decided the case of *Gabino Gonzales v. State of Indiana*, 2010 Ind. LEXIS 357. In that case, the Indiana Supreme Court ruled: "a defendant's statements made to a victim or to the court in an effort to gain acceptance of a plea agreement by the court are statements in connection with a plea agreement and therefore are not admissible as evidence pursuant to Evidence Rule 410. In this case the defendant's letter of apology to a victim was admitted at his trial after a plea agreement was rejected."

3. The *Gonzalez* case is on point with Sanders' case. Just as in *Gonzalez*, Sanders wrote a letter apologizing for his wrongdoing that was later admitted at trial. Sanders wrote the letter (file-stamped "received" by the Court on January 28, 2004) and said he "humbly, wish[ed] to apologize to the court, and to the [] family, and to God the Father in heaven for any action, [he] or his family [had] done, to cause any trials or heart aches for them in any way."

4. The letter references Sanders intention to enter a plea agreement.

5. The Court, [], conducted a guilty plea hearing on May 7, 2004. That guilty plea resulted in a failed factual basis and was rejected by the Court.

6. Sanders proceeded to trial, and the State used his letter as its Exhibit 5.

(Appellant's App. pp. 297-98). Sanders sought "to amend his petition to include Sixth Amendment and Indiana Constitutional arguments regarding problems with the admission of the letter pursuant to the *Gonzalez* decision and for all other relief deemed just and proper in the circumstances." (Appellant's App. p. 298). Despite this generalized statement, at no point did Sanders specify a claim of ineffective assistance of counsel on a failure to object to the letter's admission based on Evid. R. 410.

The post-conviction court concluded, in pertinent part, that

11. [Sanders] asserts that [trial counsel] rendered ineffective assistance in failing to object on the proper basis to the admission of a letter [Sanders] wrote to [the trial court] more than 3 months before his failed effort to plead guilty. The proper basis for an objection, according to [Sanders] would have been Indiana Evidence Rule 410 as later construed in *Gonzalez*,

8

929 N.E.2d 699. As this is not one of counsel's claimed errors mentioned in either the original [p]etition (which does not mention Gonzalez) or the amended [p]etition (which raises the *Gonzalez* issue only in free-standing form), [Sanders] is not entitled to raise it in a post-hearing brief.

(Appellant's App. p. 412) (internal references omitted). We agree. Because Sanders failed to raise a specific claim of ineffective assistance of trial counsel with respect to the admission of the letter, we conclude that the issue is waived. *See* Ind. Post-Conviction Rule 1(8).

## 2. *The Exorcist*

Next, Sanders asserts that because his trial counsel failed to follow Ind. Evid. R. 412 (b) which requires written notice ten days prior to trial for admission of evidence under the rape shield rule, the movie the Exorcist was excluded. Sanders alleges that this failure prevented his trial counsel from asserting a possible alternative explanation for J.R.'s injuries. Specifically, Sanders clarifies that because J.R. acknowledged in her deposition to having seen the movie once, she may have injured herself by mimicking a scene in the film in which a girl masturbates using a crucifix. He maintains that J.R. may have reenacted the scene on herself by using pencils. Sanders offered the names of several witnesses supporting his theory to his trial counsel, but after investigation, none of the witnesses could corroborate Sanders' version of events. At trial, trial counsel attempted to admit a tape of the Exorcist. After considering "how [] the tape of the [E]xorcist [is] relevant to an issue of material fact," the trial court excluded it as "(1) [] not relevant; two (2), it is blatant character assassination; number three (3), even if it

9

were admissible, there has been no proper hearing as it relates to any psychological issues that the victim is alleged to have." (Trial Transcript pp. 23-24).

It is clear that the tape of the Exorcist was not excluded because trial counsel failed to give the required ten day notice pursuant to Evid. R. 412; rather, it was excluded based on relevancy grounds. Besides J.R.'s single mention that she may have seen the Exorcist once, there was no evidence to support Sanders' alternative theory. Therefore, we cannot say that counsel was deficient for failing to adhere to the ten day notice requirement under the rape shield rule.

### 3. *Discovery of Additional Witness*

Sanders also contends that his trial counsel was ineffective for failing to discover that Sanders' son had sexual relations with J.R. At the post-conviction hearing, Sanders submitted an affidavit of his son, completed on March 3, 2009, alleging that he had sexual intercourse with J.R. twice during the night of May 24, 2003.

Initially we note that Sanders' son did not divulge this relationship until "[t]he day before Thanksgiving 2008," more than four years after the trial. (Petitioner's Exh. M). During the post-conviction proceedings, trial counsel testified that he had no reason to believe that family members, other than A.S. who was present during the incident, had any relevant information because they were not home at the time of the molestation. Sanders points to J.R.'s statement that she took Sanders' son's pillow with her when she went to watch television in the basement with A.S. and Sanders as support for his allegation that his trial counsel should have interviewed his son about his involvement with J.R. However, it is a huge stretch to assume that because J.R. used Sanders' son's

10

pillow, there might have been a sexual relationship between the victim and Sanders' son. Therefore, we cannot say that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms.

### 4. *Redacted Videotape*

Lastly, Sanders claims his trial counsel's performance was defective because he stipulated to the admission of a videotape, containing Sanders' admission of scratching J.R.'s back, without reviewing it prior to trial to ensure it was properly redacted. He maintains that "[f]ailure to ensure the integrity of the evidence is a mistake that falls below the reasonable standard of care for an attorney." (Appellant's Br. p. 17).

At trial, the State sought to admit and play a redacted version of the videotape to the jury. Prior to playing it, the State reviewed the redacted tape and alerted the trial court that the edited version failed to comply with the trial court's ruling on a motion in limine. Specifically, while the trial court had ruled that no references could be made to J.R.'s statement that she was hearing voices, the redacted videotape had failed to delete this mention. The State advised the trial court that:

> Your Honor, yesterday the State admitted into evidence a videotaped statement of [Sanders'] interview with Detective Kenneth Clement, and that was marked and admitted as State's Exhibit Number 2. It is the redacted version of the videotape, because there was [sic] some references made in the videotape which were, pursuant to the Motion in Limine, were out [sic] ruled and inadmissible by the [c]ourt. In reviewing this tape, the redacted version, there's a small portion that did not get redacted appropriately. That's one issue. I have discussed that with [Sanders' trial counsel] and that's not really my main concern, because it's so brief and it's not elaborated to or eluded [sic] to in great detail in the tape, so I don't think it's [sic] effect would really be placed on the jury. I don't think they would understand the context, so I mean, I'm not really as concerned about that. My biggest issue, Your Honor, is that this tape is so difficult to understand

11

because, like, it's a copy that basically, you can hardly hear anything[.] . . . I'm not sure the jury's gonna [sic] be able to hear anything, and this is like an hour and fifteen minutes to an hour and a half long of letting them hear very little. So my main concern is that, I think this would be more confusing and a waste of the jury's time to actually listen to this tape, because they just can't understand what the Defendant is saying. I can barely understand, and I've listened to it over and over again, and rewound and fast forwarded, so that's my main concern.

(Trial Tr. pp. 318-19). After trial counsel objected to only playing part of the tape, the State agreed to play it in its entirety but requested trial counsel not to direct the jury's attention to or discuss the inadmissible statements in the redacted videotape. Trial counsel replied "I haven't seen the redacted part, but I understand the motion, and I have no intention of doing anything with regard to the comment, whatever it is." (Trial Tr. pp. 321-22). In addition, the trial court took efforts to enhance the poor audio quality of the tape by ordering a microphone to be placed by the television speaker to amplify the sound.

In light of the evidence that the tape was unintelligible, we find that trial counsel's stipulation to its admission was error. *See Roller v. State*, 602 N.E.2d 165, 171 (Ind. Ct. App. 1992), *trans. denied* (It was error, albeit ultimately harmless, to admit a tape where defendant's portion of the conversation is almost completely blocked by static, with only a few of his words being distinguishable, even after several listenings). The prejudice caused by the admission of an unintelligible videotape is that the jury will be forced to speculate as to the contents of the tape, and will most likely assume that the tape contains what the State says it does. *See Hobson v. State*, 471 N.E.2d 281, 286 (Ind. 1984) ("it was impossible to determine whether the appellant was or was not confessing [on the

tape], and we held that the jury would be inclined to believe that the appellant was confessing, else the State would not have sought the admission of the tape into evidence."). Nevertheless, here, Sanders' conviction has been corroborated by other evidence. The jury also saw and read Sanders' letter to the trial court in which he admitted to touching someone else's child. Thus, we cannot say with a reasonable probability that but for trial counsel's stipulation the result of the proceeding would have been different. Therefore, trial counsel did not render ineffective assistance of counsel.

## B. *Appellate Counsel*

Next, Sanders contends that his appellate counsel rendered ineffective assistance. Specifically, he presents a two-fold claim, alleging that appellate counsel's conduct was defective when (1) he failed to raise the trial court's use of an improper aggravator during sentencing; and (2) he failed to withdraw as appellate counsel.

The standard by which we review claims of ineffective assistance of appellate counsel is the same standard applicable to claims of trial counsel ineffectiveness. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *reh'g denied, trans. denied*. In *Bieghler*, our supreme court identified three categories of appellate counsel ineffectiveness claims, including: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193-95, *reh'g denied, cert. denied*, 525 U.S. 1021 (1998). In evaluating these claims, we use the following two part test: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are clearly stronger than the raised issues. *Id*. at 194. Otherwise stated, to prevail on a claim of ineffective assistance

13

of appellate counsel, a defendant must show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonably strategy. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 260-61 (Ind. 2000), *reh'g denied, cert. denied*, 534 U.S. 1164 (2002).

## 1. *Aggravator*

Sanders contends that his appellate counsel was ineffective for failing to raise on direct appeal that the trial court had relied on an improper aggravating factor to calculate his sentence. During the sentencing hearing, the trial court found two aggravators— Sanders was in a position of trust to J.R. and his criminal history—and two mitigating factors—the hardship that a lengthy prison term would create and Sanders' health issues. Concluding that the mitigators and aggravators balanced, the trial court imposed the advisory sentence of thirty years. Sanders now asserts that he never was in a position of trust and thus his sentence was improper.

The position of trust aggravator is frequently cited by sentencing courts where an adult has committed an offense against a minor and there is at least an inference of the adult's authority over the minor. *Rodriguez v. State*, 868 N.E.2d 551, 555 (Ind. Ct. App. 2007). This aggravator applies in cases where the defendant has a more than casual relationship with the victim and has abused the trust resulting from that relationship. *Id*. Generally, cohabitation arrangements of nearly any character between adults do in fact, and should, establish a position of trust between the adults and minors living or staying together. *Id*.

14

In *Hamilton v. State*, 955 N.E.2d 723 (Ind. 2011), relied upon by Sanders, our supreme court revised Hamilton's sentence within the purview of an Appellate 7(B) sentence review. Hamilton sexually abused his wife's granddaughter when she stayed overnight at the couple's home. *Id*. at 725. Considering Hamilton's position of trust, our supreme court noted that "although he violated a position of trust, it was not quite one that rose to the level of a stepfather who had close, daily contact with a stepdaughter[.]" *Id*. Thus, even though Hamilton was considered to be in a position of trust, the aggravator did not justify as much of an aggravated sentence as the violation of a closer relationship would impose.

Here, J.R. visited with Sanders' daughter and spent the night at his house. Therefore, as the residing adult, there is at least an inference of authority over J.K. *See Rodriguez*, 868 N.E.2d at 555. As such, the trial court's consideration of the aggravator was justified and Sanders has failed to show that a challenge to this specific aggravator would be successful or stronger than the issues raised on direct appeal. Moreover, even if the challenge would be successful, Sanders has not established that, in light of the remaining aggravator, his sentence would be less than the advisory sentence already imposed. Therefore, his appellate counsel was not ineffective.

### 2. *Failure to Withdraw*

Sanders also argues that his appellate counsel was ineffective because he failed to withdraw as counsel after Sanders deemed him to inadequately represent his interests on appeal. In the instant case, it should be noted that Sanders' trial counsel continued to represent Sanders before the appellate court.

A criminal defendant's Sixth Amendment right to effective assistance of counsel includes the right to conflict-free representation. *Shepherd v. State*, 924 N.E.2d 1274, 1287 (Ind. Ct. App. 2010). To prevail on a claim of conflict of interest, the defendant must demonstrate to the post-conviction court that trial counsel had an actual conflict of interest and that the conflict adversely affected counsel's performance. *Id.* Once a defendant has demonstrated an actual conflict of interest and an adverse effect on his lawyer's performance, the prejudice prong of an ineffective assistance claim is presumed. *Id.*

Here, no actual conflict of interest existed. Sanders claims that a conflict was created because:

> I wasn't pleased with his performance at my trial and I did'nt [sic] feel that he was adequate to represent at my Appeal. I showed disdain for [counsel] and I didn't feel like he had my best interest at heart.

(Appellant's App. p. 168). Sanders' allegations merely amount to a dissatisfaction with his counsel's handling of his case; he fails to establish that his counsel was burdened by an actual conflict of interest that divided his loyalties. *See Johnson v. State*, 948 N.E.2d 331, 335 (Ind. 2011). Therefore, we cannot conclude that appellate counsel was defective for failing to withdraw.

### III. *Failure by Trial Court to Investigate*

Next, Sanders asserts that the trial court erred when it failed to investigate whether Sanders' complaints about his appellate counsel's performance had been addressed. However, because Sanders did not present this claim to the post-conviction court, the claim is unavailable for our review. "Issues not raised in the petition for post-conviction

16

relief may not be raised for the first time on post-conviction appeal." *Allen v. State*, 749

N.E.2d 1158, 1171 (Ind. 2001). Consequently, we find Sanders' claim waived.

IV. *Assisting Witness*

Lastly, Sanders contends that the post-conviction court abused its discretion when it allowed the trial prosecutor to remain at the counsel table as the State's representative and assisting witness. Specifically, Sanders argues that the trial prosecutor was not solely an assisting witness as interpreted in Ind. Evidence Rule 615, but she became an advocate when she argued to the post-conviction court that:

> Your Honor, the State would request that if [trial counsel is] not the first witness then there should be some reason in terms of the claim of ineffective assistance that the attorney would typically be the first witness and if there's some reason for deviating from that standard procedure okay, but . . .

(PCR Tr. p. 11). Sanders maintains that the trial prosecutor's dual role as both witness and advocate adversely impacted his rights.

Indiana Evidence Rule 615 provides that counsel for the State may designate an officer or employee of the State to act as its representative and that representative is exempt from an order excluding witnesses from the courtroom. The trial court has discretion to decide whether a witness qualifies as a representative pursuant to Evid. R. 615, but once the court concludes that the witness is qualified, the trial court has no discretion to exclude the witness. *Fourthman v. State*, 658 N.E.2d 88, 90 (Ind. Ct. App. 1995), *trans. denied*.

Here, the State sought to designate the trial prosecutor as its representative during the post-conviction proceeding. The post-conviction court allowed the trial prosecutor to

17

remain at the counsel's table. The sole instance of advocacy, as alluded to by Sanders above, is not supported by the record. Although originally the transcript attributed the statement to Sanders' post-conviction counsel, after officially correcting the transcript, the statement is now credited to have been made by the attorney representing the State in the post-conviction hearing. After Sanders filed a renewed motion to correct the transcript, the post-conviction court entered an order affirming the court reporter's correction after indicating that it had listened to the designated portion of the audio record. Therefore, as nothing in the record establishes that the trial prosecutor acted as anything but an assisting witness, we conclude that the post-conviction court did not abuse its discretion by allowing the trial prosecutor to remain at counsel's table.

## CONCLUSION

Based on the foregoing, we conclude that (1) Sanders received effective assistance of counsel; (2) Sanders waived his argument as to whether the trial court was obligated to investigate Sanders' complaints about his counsel; and (3) the post-conviction court properly allowed the trial prosecutor to remain at counsel table as an assisting witness.

Affirmed.

BAILEY, J. and CRONE, J. concur