**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 06 2013, 5:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK LEEMAN**
Cass County Public Defender
Leeman Law Offices
Logansport, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TRAVIS CUNNINGHAM, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 09A02-1302-CR-209 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CASS SUPERIOR COURT
The Honorable Rick Maughmer, Judge
Cause No. 09D02-1211-FC-44

**August 6, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Travis Cunningham appeals his conviction for Battery,[1] a class A misdemeanor, and the court's finding of contempt. Cunningham presents two issues on appeal:

1. Did the trial court commit fundamental error in the admission of evidence?

2. Was there sufficient evidence to sustain Cunningham's conviction for contempt of court?

We affirm.

On November 20, 2012, Cunningham and his girlfriend, Shantel Conn, started arguing, which eventually escalated into a physical fight. During the fight, Cunningham hit Conn in the face, split her lip, and caused red marks on her neck and lumps on her head. During the physical altercation, Conn left the house, located at 922 East Broadway in Logansport, without shoes or a coat.

Conn ran down Broadway while Cunningham was in pursuit; during Cunningham's pursuit of Conn, the couple continued to scream at each other. Eventually, Conn came to a curb and sat down. Cunningham grabbed Conn's forearm in an effort to remove her from the curb, and Conn reacted by punching him in the face. After Conn hit Cunningham, he returned home and Conn continued to walk, eventually stopping near a post office on 9th street.

Catherine Carter witnessed the altercation between Cunningham and Conn. She asked about Cunningham's physical state, and then proceeded to search for Conn in order to do the same. Carter drove near the post office and discovered Conn crying, shaking, and visibly

---

[1] Ind. Code. Ann. § 35-42-2-1(c) (West, Westlaw Statutes and constitution are current with all 2013 legislation).

upset. Conn told Carter that Cunningham had "choked me so hard I peed my pants." *Transcript* at 75. Carter noticed a wet spot near Conn's crotch area, and proceeded to give her a blanket due to the cold weather. Then Carter called 911. Richard Utter also witnessed the incident between Conn and Cunningham. After witnessing the altercation, Utter called 911 and also checked on Conn.

Sergeant Robert Smith of the Logansport Police Department was one of the officers who responded to the 911 call. Sergeant Smith spoke with Conn and drove her to the police station to make a statement. Based on the information he received from Conn, Sergeant Smith prepared a battery affidavit, which Conn signed. Prior to asking for Conn's signature, Sergeant Smith went over the affidavit line by line with Conn.

Cunningham was charged on November 26, 2012, with criminal confinement, a class C felony; strangulation, a class D felony; and domestic battery, a class A misdemeanor. On January 8, 2013, the State filed an amended information for Count III, changing the allegation from domestic battery to battery resulting in bodily injury, a class A misdemeanor.

A two-day jury trial was held on January 9 and 10, 2013. During the trial, Cunningham was found in contempt twice and was sanctioned 30 days in jail for his behavior.

At the conclusion of evidence, the court granted Cunningham's motion for directed verdict for the strangulation count. The jury found Cunningham guilty of battery resulting in bodily injury, but not guilty of criminal confinement. Cunningham was sentenced on January 29, 2013, to 365 days to be executed consecutively to his 30-day sentence for contempt.

1.

Cunningham contends the court's admission of certain evidence constituted fundamental error. The fundamental error exception to waiver is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Mathews v. State*, 849 N.E.2d 578 (Ind. Ct. App. 2006). Moreover, fundamental error is defined as an error so prejudicial to the rights of a defendant that a fair trial is rendered impossible. *Id*. Cunningham failed to object to the admission of the disputed evidence during trial, so in an attempt to avoid waiver, he asserts the admission of the evidence constituted fundamental error.

Firstly, Cunningham contends that the admission of recordings of his jail telephone calls to Conn amounted to fundamental error. Cunningham argues the jail phone calls were inadmissible due to a lack of relevance. Under Ind. Evidence Rule 401, "A statement is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Cunningham called Conn from jail on three occasions, and he urged her not to testify against him, to file a motion disputing her original statement, and to rescind the no-contact order. Conn initially expressed apprehension about changing her previous account of events, but she testified at trial that the police misunderstood her statement and Cunningham did not confine or strangle her. Conn's inconsistent account of events created an issue concerning her credibility. The phone calls provided the jury with a method of assessing

4

Conn's credibility, and assisted the jury in determining the validity of Conn's differing accounts of events. Therefore, the content of the phone calls was relevant and admissible under Ind. Evid. R. 402.

Cunningham also contends that even if the phone calls were relevant, they should have been excluded under Indiana Evid. R. 403, which provides that otherwise relevant evidence is inadmissible if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Cunningham argues the prejudice stems from the statement at the beginning of each call informing the recipient that the call is originating from jail. Cunningham analogizes the admission of the calls to the prejudice suffered by a defendant sitting in court for an extended period of time dressed in prison attire. *See Estelle V. Williams*, 425 U.S. 501 (1976) (holding the jury's continuous exposure to the defendant in jail attire amounted to prejudice and impaired the presumption of innocence). We find this analogy unpersuasive. Unlike the jury in *Estelle*, the jury in the current case was exposed to three brief statements that collectively amounted to a few seconds. Also, in *Estelle,* the defendant appeared in prison attire because he was compelled to do so. In contrast, Cunningham actively consented to the recording of his phone calls, even after receiving a warning that they could be used in court. Moreover, phone calls made from jail are admissible if the defendant discusses the crime for which he is incarcerated. *King v. State*, 985 N.E.2d 755 (Ind. Ct. App. 2013), *trans denied*. Also, the fact that the jury knew Cunningham was incarcerated does not cause overwhelming prejudice sufficient to reverse a conviction. See *Hackett v. State*, 716 N.E.2d 1273 (Ind. 1999) (court held that two

5

jurors briefly seeing defendant in prison attire did not amount to unfair prejudice). Therefore, we conclude that Evid. R. 403 did not preclude the admission of the phone calls.

Cunningham also argues that the phone calls were inadmissible because they "provided evidence of crimes, wrongs, or acts in order to prove the character of a person to show action in conformity therewith." Ind. Evidence Rule 404(b). The standard of reviewing evidence under Indiana rule of Evid. R. 404(b) is:

> (1) the court must determine that the evidence of other crimes , wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.

*Whatley v. State*, 908 N.E2d 276, 281 (Ind. Ct. App. 2009).

Evidence is inadmissible when offered to produce the "forbidden inference" that the defendant has engaged in other, uncharged misconduct and the charged conduct was in conformity with the uncharged misconduct. *Crain v. State*, 736 N.E.2d 1223, 1235 (Ind. 2000). The trial court has broad discretion in weighing the probative value of the evidence against the possible prejudice of its admission. *Crain v. State*, 736 N.E.2d. 1223. If evidence has some purpose besides behavior in conformity with a character trait and the balancing test is favorable, the trial court is free to admit the evidence. *Id*.

Cunningham contends the jail conversations were evidence of prior misconduct, We disagree. Cunningham's presence in jail, standing alone, is not evidence of a prior bad act. Cunningham's presence in jail was briefly acknowledged only when discussing the phone calls he placed to Conn, and as previously mentioned, this evidence was introduced to examine the validity of Conn's testimony. Moreover, other than the aforementioned claim,

Cunningham does not cite another instance in the record detailing any misconduct or a prior bad act. Also, the state did not characterize the phone calls as misconduct or bad acts and utilized them only to validate Conn's prior statements. Therefore, we find the admission of the calls does not amount to fundamental error.

In addition, Cunningham argues the jail phone calls were hearsay and therefore inadmissible. Even if the phone calls did contain hearsay, the admission of the statements did not amount to fundamental error. "Where the jury's verdict is supported by independent evidence of guilt such that upon review we are satisfied that there was no substantial likelihood that the evidence in question played a part in appellant's conviction, any error in its admission is harmless." *Boatright v. State*, 759 N.E.2d 1038, 1042 (Ind. 2001). Several independent witnesses' accounts detailed the altercation between Cunningham and Conn, a letter authored by Cunningham acknowledged the physical altercation, and photos of Conn portrayed injuries allegedly caused by Cunningham during the physical altercation. In light of the substantial evidence of Cunningham's guilt, we cannot conclude that the admission of the phone calls was so prejudicial as to render a fair trial impossible as is required to support a claim resulting in fundamental error.

Cunningham also contends the admission of the battery affidavit resulted in undue prejudice resulting in fundamental error. Particularly, Cunningham asserts the document contained inadmissible hearsay and constituted to fundamental error. Even if the proffered evidence was inadmissible hearsay, Cunningham failed to show substantial harm flowing from its admission. "The improper admission of evidence is harmless error when the

7

conviction is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Headlee v. State*, 678 N.E.2d 823, 826 (Ind. Ct. App. 1997).

Conn testified that she and Cunningham were involved in a physical altercation on November 20, 2012, and Carter, Utter, Sergeant Smith, and other witnesses acknowledged that an altercation occurred. Telephone conversations between Conn and Cunningham detailed and acknowledged that a physical altercation had occurred between the couple. Moreover, Sergeant Smith's photos of Conn's injuries, which allegedly resulted from the physical altercation, were admitted into evidence, and according to Jail Commander Officer Tony Bartling, Cunningham's booking information "does not show that there were any [injuries] when he was booked in." *Transcript* at 156. In light of this independent, overwhelming evidence, we find any error in the admission of the affadavit was harmless.

Cunningham also contends a letter he had written to the court was improperly admitted. Cunningham wrote a letter that was addressed to his counsel, but it was ultimately filed with the court. In the letter, Cunningham explained that Conn unintentionally accused him of physical violence in her statement. Cunningham also promised to never hit Conn again and that he would drop a tort claim against the state if the charges against him were dropped. Cunningham also instructed the recipient of the letter to present it to the jurors or state. During trial, the court admitted the letter over Cunningham's relevancy objection, and Cunningham now contends the letter was inadmissible because it was the product of plea negotiations.

8

A plea agreement between a defendant and prosecutor is designed to induce a guilty plea in exchange for a reduced sentence for the defendant. *Pannarale v. State*, 638 N.E.2d 1247 (Ind. 1994). Ultimately, acceptance of the plea agreement is dependent on the court's discretion. *Id.* A plea negotiation does not start until the parties have agreed to begin negotiations. *Gonzalez v. State*, 929 N.E.2d 699 (Ind. 2010). Moreover, to qualify as privileged communication, a statement must meet two requirements: "first, the defendant must have been charged with a crime at the time of the statement, and, second, the statement must have been made to someone with authority to enter into a binding plea bargain." *Id.* at 701.

Cunningham's letter was not the product of plea negotiations. The letter he authored was not directed toward an individual with the authority to initiate negotiations in furtherance of an agreement. Furthermore, an individual cannot unilaterally impose terms or negotiations concerning a plea agreement; both parties must agree to negotiations in furtherance of a plea in order for the contents of the negotiations to be privileged, which did not occur in the current case.

For all of these reasons, we conclude that none of Cunningham's arguments rise to the level of fundamental error.

2.

Cunningham also argues his conviction for contempt of court was not supported by sufficient evidence. In reviewing a challenge to the sufficiency of the evidence, the appellate court neither reweighs the evidence nor judges the credibility of the witnesses. *Baumgartner*

9

*v. State*, 891 N.E.2d 1131 (Ind. Ct App. 2008). Moreover, the reviewing court considers only the evidence most favorable to the judgement and all reasonable inferences therefrom. *Washington v. State*, 902 N.E.2d 280 (Ind. Ct. App. 2009). Where there is conflicting evidence, the appellate court considers that evidence only in the light most favorable to the judgment. *Dewald v. State*, 898 N.E.2d 488 (Ind. Ct. App. 2008), *trans. denied*. The appellate court will affirm if evidence of probative value exists from which a fact finder could find the defendant guilty beyond a reasonable doubt. *Gray v. State*, 871 N.E.2d 408 (Ind. Ct App. 2007), *trans. denied*. "Reversal is only appropriate when reasonable persons would be unable to form inferences as to each material element of the offense." *McCray v. State*, 850 N.E.2d 998, 1000 (Ind. Ct. App. 2006), *trans. denied*.

The trial court found Cunningham in contempt on three separate occasions during his hearing. The first instance involved Cunningham screaming "liar" during Utter's testimony. *Transcript* at 83. The second instance of contempt stemmed from Cunningham's communication with Conn during court recess, which directly violated a no-contact order, and the court found that Cunningham stared-down the court reporter in an effort to intimidate her. Cunningham was given an opportunity to explain why he stared-down the court reporter, and he stated, "I didn't realize I was doing that, and I apologize if I was. I didn't mean nothing by it." *Id.* at 161. The court sanctioned Cunningham an additional 30 days in jail for his behavior, and Cunningham now contends that the trial court lacked sufficient evidence to impose the sanction.

The power of Indiana courts to summarily punish for direct criminal contempt, while

specified by statute, rests upon common law. *Hopping v. State*, 637 N.E.2d 1294 (Ind. 1994).

It is essential for a court to be able "to protect itself against gross violations of decency and

decorum." *Id*. at 1296. Contempt of court involves the disobedience of a court directive that

undermines the court's authority, justice, and dignity. *Hopping v. State,* 637 N.E.2d 1294.

Any act related to a current or pending proceeding which tends to deter the court from the

performance of its duties may support a contempt proceeding. *Id*. Any act that manifests a

disrespect and defiance of a court may constitute direct criminal contempt. *Id*. Ind. Code

Ann. § 34-4-7-7 (West, Westlaw Statutes and constitution are current with all 2013

legislation) provides:

> The court shall distinctly state the act, words, signs, or gestures, or other conduct of the defendant which is alleged to constitute such contempt; and such statement shall be reduced to writing either by the judge making it, or by some reporter authorized by him to take it down when made; and the same shall be substantially set forth in the order of the court on the same.

Contempt in the presence of the court, or so near to the court as to interrupt its proceeding,

may be punished in a summary manner, without evidence other than the personal knowledge

of the presiding judge. *Warr v. State*, 877 N.E.2d 817 (Ind. Ct. App. 2007).

The court trial identified specific instances to satisfy the basis of Cunningham's

contempt sanction, such as his outburst during the court proceedings, his violation of the no-

contact order, and his attempt to intimidate the court reporter. Furthermore, Cunningham

offered an apology for his actions in court, and even though he claimed a lack of intent in

regards to the offending action toward the court reporter, he did acknowledge its occurrence

in his apology to the court. In the end, Cunningham's argument is a request for the court to

11

reweigh the evidence, which we do not do. Therefore, the evidence was sufficient to sustain Cunningham's sanction for contempt.

We affirm.

BAKER, J., and VAIDIK, J., concur.